UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
TANESHA WEAVER,

              Plaintiff,

- against -

CITY OF NEW YORK et al.,

              Defendants.
------------------------------------------------------------x

NOT FOR PUBLICATION
MEMORANDUM & ORDER
13-cv-20 (CBA) (SMG)

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ MAR 1 1 2014 ★
BROOKLYN OFFICE

**AMON, Chief United States District Judge:**

Plaintiff Tanesha Weaver brings this action against defendants City of New York ("City"), Police Officer Greggory Gingo ("Officer Gingo"), Sergeant John Doe 1, and five John Doe police officers identified as John Does 1-5. Weaver asserts claims for, inter alia, false arrest, malicious prosecution, and failure to intervene in violation of 42 U.S.C. § 1983, as well as related New York state law torts. Currently before the Court is defendants' motion to dismiss the complaint. At oral argument, the Court dismissed Weaver's malicious abuse of process, equal protection and substantive due process claims for failure to state a claim. The Court also dismissed Weaver's claims under New York state law for assault, battery, and general negligence. Finding Weaver's claim for municipal liability to be insufficiently pleaded, the Court permitted her ten days to amend her complaint with respect to that claim.

For the reasons set forth below, defendants' motion is granted in part and denied in part.

## BACKGROUND

The following facts, drawn from Weaver's complaint, are assumed true for purposes of ruling on the motion to dismiss.

1

Weaver's claims arise out of a domestic violence dispute with her then-boyfriend, Harvey Moultrie ("Moultrie"), at approximately 10:00 p.m. on July 9, 2011. (Compl. ¶ 14.) Weaver and Moultrie were in the bedroom of Weaver's residence at 946 Albany Avenue, Brooklyn, New York, when Moultrie punched Weaver in the face. (Id. ¶ 14.) Weaver seized a foot-and-a-half long stick, which she dropped when Moultrie began strangling her. (Id. ¶¶ 15, 16.) Weaver asked Moultrie to let her go to a hospital because she believed her nose was broken, but he refused. (Id. ¶ 18.) Moultrie prevented Weaver from using her cell phone or the home phone, so Weaver ran to her laptop to contact someone for help. (Id. ¶¶ 17-19.) When Moultrie approached her, Weaver grabbed a pair of scissors in an attempt to defend herself, which Moultrie then wrested from her, cutting her finger in the process. (Id.)

Using her laptop, Weaver sent several Facebook messages to her nephew, Timothy Spencer, asking him to call the police. (Id. ¶¶ 21-23.) Timothy responded to Weaver and told her that his mother and Weaver's sister – Tasha Tarry – had called the police. (Id. ¶¶ 22-23.) Weaver then went into the bathroom and locked the door. (Id. ¶ 25.) Tasha Tarry and her son arrived at Weaver's home and demanded to see her. (Id.) Hearing them enter, Weaver exited the bathroom and told Moultrie to leave the apartment. (Id. ¶¶ 26-28.) Moultrie refused. Weaver then dialed 911 and told the operator that Moultrie had beaten her and that she needed the police and an ambulance. (Id.)

After midnight on July 10, 2011, defendants Officer Gingo and Officer John Doe 1 arrived at Weaver's apartment. (Id. ¶ 28.) Weaver told the officers that Moultrie punched her in the nose, strangled her, and refused to permit her to leave the apartment. (Id. ¶ 29.) At this time, Weaver's nose was broken, her neck showed redness, and her finger was bleeding. (Id. ¶ 32.) Officers Gingo and John Doe 1 reviewed the Facebook message that Weaver sent her nephew

which asked him to call the police, and told Weaver that they had in fact received the call but "it was not in their jurisdiction." (Id. ¶ 29-30.) The officers did not question Weaver's sister, Tasha Tarry, or her nephew Timothy. (Id.)

Weaver told the Officers Gingo and John Doe 1 that she had grabbed a stick to avoid being attacked by Moultrie but that she had not used it to hit him. (Id. ¶ 31.) The police officers told Weaver that they had to wait for their Sergeant to determine whether they would arrest her. (Id. ¶ 33.) When defendant Sergeant John Doe 1 arrived, he and Officers Gingo and John Doe 1 went into a separate room to speak with Moultrie, who apparently accused Weaver of being the aggressor.[1] (Id. ¶¶ 33-34, 40.) After interviewing Moultrie, Sergeant John Doe 1 and Officers Gingo and John Doe 1 arrested Moultrie for misdemeanor assault and obstruction of breathing and arrested Weaver for felony assault. (Id. ¶ 39.) Weaver was processed at the 67th Precinct and then transported by police officers to Long Island Hospital in Brooklyn where her injuries were treated. (Id. ¶¶ 36-37.) Weaver was then imprisoned at the 67th Precinct until July 12, 2011 when she was arraigned in Kings County Criminal Court. (Id. ¶ 38.) Weaver was released on her own recognizance. The charges against her were dismissed on January 12, 2012 and the case was sealed. (Id. ¶¶ 42, 45.)

On February 12, 2012, Weaver filed a Notice of Claim against the City. (Id. ¶ 88; Trainor Decl. at ¶ 5; Lichterman Decl., Ex. B). On August 6, 2012, an examination of Weaver was conducted pursuant to New York General Municipal Law § 50-h. (See Trainor Decl. at ¶ 5). Weaver filed the complaint in this action on January 3, 2013.

---

[1] Weaver's complaint gives no hint as to the substance of Moultrie's accusations against her except that they were "self-serving, unreliable, and incredible claims of victimhood." (Id. ¶¶ 41-42.)

3

# DISCUSSION

## I. Legal Standard

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may move for dismissal on the ground that the complaint "fail[s] to state a claim upon which relief can be granted." To withstand a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 678.

In reviewing a 12(b)(6) motion, a court must accept the plaintiff's factual allegations as true and must draw all reasonable inferences in favor of the plaintiff. Kittay v. Kornstein, 230 F.3d 531, 537 (2d Cir. 2000). A complaint, however, that contains only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555. Neither will a complaint that contains only "naked assertion[s]" without "further factual enhancement." Id. at 557; see Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009).

### A. Consideration of Extrinsic Materials

When ruling on a Rule 12(b)(6) motion to dismiss a complaint for failure to state a claim, a court is generally required to "look only to the allegations on the face of the complaint." Roth v. Jennings, 489 F.3d 499, 509 (2d Cir. 2007). However, a court may consider "documents attached to the complaint as an exhibit or incorporated in it by reference, matters of which judicial notice may be taken, or documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002) (ellipses omitted). If matters outside the pleadings are presented in

4

connection with a Rule 12(b)(6) motion, a court may "exclude the additional material and decide the motion on the complaint alone or convert the motion to one for summary judgment under Fed. R. Civ. P. 56 and afford all parties the opportunity to present supporting material." Friedl v. City of New York, 210 F.3d 79, 83 (2d Cir. 2000) (quotation marks omitted).

Defendants have annexed several extrinsic documents as exhibits in support of their motion to dismiss, which they request that the Court consider. Specifically, defendants have submitted (1) a copy of the Notice of Claim filed by Weaver with the City on February 15, 2012; (2) a copy of Weaver's testimony at a hearing held on August 6, 2012 pursuant to New York General Municipal Law § 50–h ("50-h testimony"); and (3) a copy of the New York City Police Department arrest report from Weaver's criminal file. (See Lichterman Decl., Ex. B-D.) Defendants urge this Court to take judicial notice of the arrest report or deem it, along with Weaver's 50-h testimony, to be incorporated by reference in Weaver's complaint. (See Def.'s Mem. at 4-5.)

Citing Obilo v. City Univ. of City of New York, No. CV-01-5118, 2003 WL 1809471 (E.D.N.Y. Apr. 7, 2003), defendants contend that the report of Weaver's arrest may be considered by this Court because it is "central" to her allegations that she was arrested and prosecuted without probable cause. (Def.'s Mem. at 4-5.) In Obilo, the Court considered several exhibits appended to defendant's 12(b)(6) motion to dismiss, including a copy of the complaint and incident report filed by a person claiming to have been assaulted by the plaintiff. 2003 WL 1809471 at *3-4. The Court reasoned that the plaintiff's claim that he was arrested and prosecuted without probable cause was an "implicit reference" to the incident report and complaint and that the documents were therefore incorporated by reference in the complaint. See id. at *4 ("If assertions in plaintiff's complaint are based on allegations of sexual

5

assault ... it should come as no surprise to plaintiff if the documents that initiated those allegations are considered when determining whether to dismiss plaintiff's claims.").

This Court is not persuaded, however, that Second Circuit precedent permits consideration of an arrest report on a 12(b)(6) motion. It is clear that "plaintiff's reliance on the terms and effect of a document in drafting the complaint is a necessary prerequisite to the court's consideration of the document on a dismissal motion" and that "mere notice or possession is not enough." Chambers, 282 F.3d at 153 (emphasis in original); see Global Network Commc'ns, Inc. v. City of New York, 458 F.3d 150, 156-57 (2d Cir. 2006) (explaining that where the "integral to the complaint" exception is recognized, the extrinsic document is usually a "contract or other legal document containing obligations upon which the plaintiff's complaint stands or falls"). Here, Weaver's complaint contains no reference to the arrest report and this Court does not find that the report is "integral" to Weaver's allegations within the meaning of that exception. A court may certainly take judicial notice of public records for their existence, such as an indictment or documents relating to the disposition of a criminal case. Global Network Commc'ns, 458 F.3d at 157; Awelewa v. New York City, No. 11 CIV. 778, 2012 WL 601119, at *3 (S.D.N.Y. Feb. 23, 2012) (taking judicial notice of a public NYPD arrest report). But it does not appear that the report of Weaver's arrest is in fact a public record, as the first page of the report states that it contains sealed information. (See Lichterman Decl., Ex. D.) This Court will therefore not consider it in deciding this motion to dismiss.

Defendants also argue that the Court may consider Weaver's 50-h testimony and the Notice of Claim because they are incorporated by reference in Weaver's complaint. (See Def.'s Mem. at 2 n.1; Reply at 2.) Weaver does explicitly refer to the Notice of Claim, and the Court agrees with defendants that it is incorporated by reference and should be deemed part of the

pleading. (Compl. ¶ 88); see, e.g., Lumaj v. Williams, No. 03 CIV. 1849, 2004 WL 1207894, at *1 n.2 (S.D.N.Y. June 2, 2004).

However, Weaver has not referred to her 50-h testimony in the complaint, nor is there reason to believe that Weaver relied on a transcript of her testimony in filing the complaint. It would therefore be improper for this Court to consider the transcript of Weaver's 50-h testimony on a motion to dismiss. See, e.g., Fontanez v. Skepple, No. 12-CIV-1582, 2013 WL 842600, at *2-3 (S.D.N.Y. Mar. 6, 2013) (finding consideration of a transcript of plaintiff's 50-h testimony to be inappropriate on a motion to dismiss); HB v. Monroe Woodbury Cent. Sch. Dist., No. 11-CV-5881, 2012 WL 4477552, at *6-7 (S.D.N.Y. Sept. 27, 2012) (same); Utsey v. Murphy, No. 1:08-CV-1140, 2010 WL 148640, at *2 (N.D.N.Y. Jan. 13, 2010) (same); Aguilera v. Cnty. of Nassau, 425 F. Supp. 2d 320, 322-23 (E.D.N.Y. 2006) (same). But cf. Dellate v. Great Neck Union Free Sch. Dist., No. CV 09-2567 AKT, 2010 WL 3924863, at *4 (E.D.N.Y. Sept. 30, 2010) aff'd, 448 F. App'x 164 (2d Cir. 2012) (summary order). Accordingly, the Court will not consider Weaver's 50-h testimony in deciding this motion.

## II. Weaver's Section 1983 Claims[2]

To state a claim under section 1983, a plaintiff must allege that state officials, acting under color of state law, deprived her of a right guaranteed to her by the Constitution or federal law. 42 U.S.C. § 1983; see Graham v. Henderson, 89 F.3d 75, 79 (2d Cir. 1996). Personal

---

[2] Weaver also purports to state a claim under 42 U.S.C. § 1981, which provides that "[a]ll persons within the jurisdiction of the United States shall have the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens . . . ." 42 U.S.C. § 1981(a). To state a claim under § 1981, a plaintiff must allege facts "in support of the following elements: (1) the plaintiff is a member of a racial minority; (2) an intent to discriminate on the basis of race by the defendant; and (3) the discrimination concerned one or more of the activities enumerated in the statute (i.e., make and enforce contracts, sue and be sued, give evidence, etc.)." Mian v. Donaldson, Lufkin & Jenrette Sec. Corp., 7 F.3d 1085, 1087 (2d Cir. 1993). Weaver has not alleged an intent to discriminate on the basis of race by the defendants, nor has Weaver identified an enumerated § 1981 activity. (Compl. ¶¶ 52-57.) The Court therefore dismisses any and all claims brought under that statute.

7

involvement of the defendants in the alleged constitutional deprivations is a prerequisite to an award of damages under § 1983. See Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994).

Defendants have moved to dismiss Weaver's claims of false arrest, malicious prosecution, and failure to intervene. Defendants argue that probable cause existed for Weaver's arrest and prosecution and that Weaver's allegations regarding her failure to intervene claim are insufficient. The Court will examine each of these claims in turn. Since Weaver's complaint does not specify which claims she brings against which defendants, this Court has, where possible, identified the defendants against whom Weaver has stated a claim based on the allegations in the complaint.

### A. False Arrest

A § 1983 claim for false arrest or false imprisonment, based on an individual's Fourth Amendment right to be free from unreasonable seizures, is substantially the same as a claim for false arrest under New York law. Boyd v. City of New York, 336 F.3d 72, 75 (2d Cir. 2003). The claim requires the plaintiff to show (1) that the defendant intended to confine the plaintiff; (2) that the plaintiff was conscious of the confinement; (3) that the plaintiff did not consent to the confinement; and (4) that the confinement was not otherwise privileged. See Savino v. City of New York, 331 F.3d 63, 75 (2d Cir. 2003). The existence of probable cause to arrest renders an arrest privileged and "is a complete defense to an action for false arrest." Bernard v. United States, 25 F.3d 98, 102 (2d Cir. 1994); see Jaegly v. Couch, 439 F.3d 149, 152 (2d Cir.2006) ("[T]he existence of probable cause is an absolute defense to a false arrest claim.").

Probable cause requires an officer to have "knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested." Martinez v. Simonetti, 202 F.3d 625, 634 (2d Cir.

2000) (citation omitted). "Whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest." Devenpeck v. Alford, 543 U.S. 146, 152-53 (2004). "[I]t is well-established that a law enforcement official has probable cause to arrest if he received his information from some person, normally the putative victim or eyewitness, unless the circumstances raise doubt as to the person's veracity." Panetta v. Crowley, 460 F.3d 388, 395 (2d Cir. 2006) (citations and internal quotation marks omitted); see Martinez, 202 F.3d at 634 ("We have previously held that police officers, when making a probable cause determination, are entitled to rely on the victims' allegations that a crime has been committed."). The veracity of those individuals "who are the victims of the very crime they report to the police is assumed." Miloslavsky v. AES Engineering Soc., Inc., 808 F. Supp. 351, 355 (S.D.N.Y. 1992), aff'd, 993 F.2d 1534 (2d Cir. 1993).

Defendants move to dismiss this claim on the ground that Moultrie's statements to Officer Gingo established probable cause for Weaver's arrest. They argue that Moultrie's accusations, along with Weaver's acknowledgement that she made use of a stick and scissors during the dispute, gave the defendant officers a reasonable basis to believe that Weaver placed Moultrie "in fear of physical injury." (Def.'s Mem. at 5-9.) Weaver counters that she was very clear to police that she picked up a stick and scissors only in an attempt to defend herself against Moultrie. (See Pl.'s Mem. at 11-19.) Weaver further argues that her injuries and account of the incident should have raised substantial doubt as to Moultrie's credibility as a victim. (See id.)

Weaver's complaint permits the inference that the defendant officers had reason to doubt Moultrie's accusations and should have investigated further before arresting Weaver. Although "victim complaints ordinarily establish probable cause," a "prior relationship between the victim and the accused [can give] rise to a motive for a false accusation" and may require the arresting

officer to investigate further prior to arrest. Mistretta v. Prokesch, 5 F. Supp. 2d 128, 133-34 (E.D.N.Y. 1998). In this case, Weaver alleges facts sufficient to state a claim that a reasonable police officer had reason to doubt the veracity of Moultrie's story prior to arresting her. If, as defendants contend, Moultrie in fact made credible allegations that Weaver assaulted him with a stick and scissors during their dispute, defendants will be able to demonstrate probable cause as a defense to false arrest on a summary judgment motion. See id. at 133-34 (granting summary judgment on plaintiff's false arrest claim where police officers adequately investigated victim's accusations). But this Court cannot determine, before any discovery has been undertaken, that Moultrie's statements provided the officer defendants with probable cause to arrest Weaver.

Although Weaver appears to assert this false arrest claim against all defendants, the factual allegations in her complaint only support a false arrest claim as against those present during the arrest: Sergeant John Doe 1 and Officers Gingo and John Doe 1. Accordingly, defendants' motion to dismiss the false arrest claims as against those arresting officers is denied.

1. *Qualified Immunity*

Defendants argue that even if there was no probable cause for Weaver's arrest, Officer Gingo is entitled to qualified immunity. A police officer is entitled to qualified immunity as a matter of law if the evidence shows either that it was "objectively reasonable for the officer to believe that probable cause existed" or that "officers of reasonable competence could disagree on whether the probable cause test was met." Robinson v. Via, 821 F.2d 913, 921 (2d Cir. 1987); see Jenkins v. City of N.Y., 478 F.3d 76, 87 (2d Cir. 2007). Based on the facts set forth in the complaint, this Court cannot say that it was objectively reasonable for Officer Gingo to believe that he had probable cause for Weaver's arrest. See Mack v. Town of Wallkill, 253 F. Supp. 2d 552, 560 (S.D.N.Y. 2003) ("The problem here is that the factual record is in serious dispute,

which precludes the Court from making the ultimate legal determination of whether a reasonable police officer would have believed he had probable cause to arrest [the plaintiff].") (emphasis omitted).

B.  **Malicious Prosecution**

Like a claim of false arrest, the elements of a malicious prosecution claim under 42 U.S.C. § 1983 are drawn from state law. See Boyd, 336 F.3d at 75; Jocks v. Tavernier, 316 F.3d 128, 134 (2d Cir. 2003). To establish a claim of malicious prosecution, a plaintiff must show: (1) the defendant initiated or continued a criminal proceeding; (2) the proceeding terminated favorably to the plaintiff, (3) there was no probable cause for the criminal charge; and (4) the defendant acted maliciously. Rothstein v. Carriere, 373 F.3d 275, 282 (2d Cir. 2004); Savino, 331 F.3d at 72. Under § 1983, a claim of malicious prosecution also requires a showing that there was "a sufficient post-arraignment liberty restraint to implicate the plaintiff's Fourth Amendment rights." Rohman v. NYC Transit Authority, 215 F.3d 208, 215 (2d Cir. 2000); see also Singer v. Fulton County Sheriff, 63 F.3d 110, 116 (2d Cir. 1995) ("A plaintiff asserting a Fourth Amendment malicious prosecution claim under § 1983 must . . . show some deprivation of liberty consistent with the concept of 'seizure.'").

Defendants argue that Weaver's malicious prosecution claim fails because probable cause existed for her prosecution. As discussed above, Weaver has adequately alleged that no probable cause existed for her arrest. Accordingly, whether probable cause existed for her prosecution cannot be determined on a motion to dismiss. See Posr v. Court Officer Shield No. 207, 180 F.3d 409, 417 (2d Cir. 1999).

### C. Failure to Intervene

Weaver asserts a § 1983 claim against defendants for failing to intervene in her false arrest and prosecution. "A law enforcement officer has an affirmative duty to intercede on behalf of a citizen whose constitutional rights are being violated in his presence by other officers." O'Neill v. Krzeminski, 839 F.2d 9, 11 (2d Cir. 1988). An officer who fails to intervene can be held liable for damages under § 1983 only if "that officer observes or has reason to know . . . that a citizen has been unjustifiably arrested." Oliphant v. Villano, 3:09CV862 JBA, 2011 WL 3902741, at *2 (D. Conn. Sept. 6, 2011 (quoting Anderson v. Branen, 17 F.3d 552, 557 (2d Cir. 1994)).

Because Weaver's complaint alleges facts from which this Court could reasonably infer that at least one of the defendants had reason to know that Weaver was being unjustifiably arrested, her claim may proceed. (See Compl. ¶¶ 29-36.) Although Weaver's complaint does not make clear which officers failed to intervene, she has properly alleged at least one constitutional violation and is entitled to discovery to determine which officers participated directly in the alleged constitutional violation and which officers were present and failed to intervene. Accordingly, the Court denies defendants' motion to dismiss this claim.

## III. Municipal Liability

Weaver's eighth cause of action seeks to hold the City liable under Monell v. Dep't of Soc. Serv., 436 U.S. 658 (1978). To state a claim for relief under 42 U.S.C. § 1983 against a municipal defendant, a plaintiff must show the existence of an officially adopted policy or custom, and a direct causal connection between that policy or custom and the deprivation of a constitutional right. Bd. of County Comm'rs v. Brown, 520 U.S. 397, 403-5 (1997). "Proof of a single incident of unconstitutional activity is not sufficient to impose liability under Monell,

unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which . . . can be attributed to a municipal policymaker." City of Oklahoma v. Turtle, 471 U.S. 808, 823-24 (1985); see Ricciuti v. N.Y.C. Transit Authority, 941 F.2d 119, 123 (2d Cir. 1991) ("[A] single incident alleged in a complaint, especially if it involved only actors below the policy-making level, does not suffice to show a municipal policy."). Stated differently, the plaintiff must demonstrate that the municipality was the "moving force" behind the alleged injury. Brown, 520 U.S. at 405.

At oral argument, this Court determined that Weaver's complaint lacked sufficient factual allegations concerning Monell liability. Weaver alleges that "[i]t is widely understood that the NYPD has engaged in, and continues to engage in, an unlawful policy of arresting both victim and perpetrator in certain domestic violence disputes" and that the "customs, policies, usages, practices, procedures, and rules of the NYPD included . . . arresting citizens without probable cause and then committing perjury and/or manufacturing evidence and/or engaging in falsification in an effort to convict such individuals." (Compl. ¶¶ 48, 79.) These vague and conclusory assertions are not sufficient to state a claim of municipal liability under Monell. See Missel v. County of Monroe, 351 Fed. App'x 543, 545 (2d Cir. 2009) ("To allege the existence of an affirmative municipal policy, a plaintiff must make factual allegations that support a plausible inference that the constitutional violation took place pursuant either to a formal course of action officially promulgated by the municipality's governing authority or the act of a person with policymaking authority for the municipality."); Ricciuti, 941 F.2d at 124 ("[O]ur prior cases suggest that an allegation of municipal policy or custom would be insufficient if wholly conclusory.").

Because Weaver has not amended her complaint to add factual allegations that plausibly support Monell liability, her § 1983 claims against the City of New York are dismissed.

## IV. State Law Claims

Weaver also bring claims under New York state law for false arrest, malicious prosecution, malicious abuse of process, intentional infliction of emotional distress, negligent screening, hiring, training, supervision, and retention, respondeat superior liability against the City, and violations of Article I of the New York State Constitution. For the same reasons that this Court found that Weaver's federal malicious abuse of process and equal protection claims fail, her state law malicious abuse of process and equal protection claims are dismissed. Likewise, because this Court determined that Weaver's federal false arrest and malicious prosecution claims survive this motion to dismiss, Weaver may proceed on these claims under state law and on a theory of respondeat superior against the City as well.

Defendants argue that Weaver's state law claims against Officer Gingo must be dismissed because he was not named in Weaver's notice of claim as required by Section 50-e of the New York General Municipal Law. (See Def.'s Mem. at 18-20.) However, a recent Fourth Department case has criticized and departed from other cases which held that § 50-e barred actions against individuals who were not named in a notice of claim, creating a split among New York's appellate courts. See Goodwin v. Pretorius, 105 A.D.3d 207, 216, 962 N.Y.S.2d 539, 546 (4th Dep't 2013) ("The underlying purpose of the statute may be served without requiring a plaintiff to name the individual agents, officers or employees in the notice of claim.") This Court predicts that the New York Court of Appeals, were it to consider this issue, would adopt the sound reasoning in Goodwin. See Chamberlain v. City of White Plains, No. 12-CV-5142 CS, 2013 WL 6477334, at *22 (S.D.N.Y. Dec. 10, 2013) ("In the absence of more specific guidance,

14

I adopt the Goodwin Court's well-reasoned conclusion that there is no requirement that individual defendants be specifically named in the Notice of Claim."); see also Reyes v. City of New York, No. 11 CIV. 7084, 2014 WL 173412, at *8 (S.D.N.Y. Jan. 16, 2014) (same). Accordingly, Weaver's state law claim for malicious prosecution against Officer Gingo will not be dismissed due to her failure to identify him in her Notice of Claim.

For the reasons set forth below, Weaver's remaining state law claims are dismissed.

### A. Intentional Infliction of Emotional Distress Claim

Weaver's fourteenth cause of action asserts a claim for intentional infliction of emotional distress. (Id. ¶¶ 110-15.) Under New York law, a plaintiff claiming intentional infliction of emotional distress must show: (1) extreme and outrageous conduct, measured by the reasonable bounds of decency tolerated by society; (2) intent to cause, or disregard of a substantial probability of causing, severe emotional distress; (3) a causal connection between the conduct and the injury; and (4) severe emotional distress. See Conboy v. AT&T Corp., 241 F.3d 242, 258 (2d Cir. 2001).

Weaver fails to state an intentional infliction of emotional distress claim because defendants' conduct, as alleged, was not extreme or outrageous. Although Weaver alleges she suffered emotional distress as a result of being falsely arrested and prosecuted, these actions by themselves do not constitute conduct "beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." Id. Moreover, New York courts, as well as federal courts applying New York law, have consistently held that where alleged conduct "fits well within the traditional tort theories of false arrest [and] malicious prosecution," a claim of intentional infliction of emotional distress is not available. Yang Feng Zhao v. City of New York, 656 F. Supp. 2d 375, 404-405 (S.D.N.Y. 2009) (collecting cases). Here, the factual

allegations supporting Weaver's intentional infliction of emotional distress claim are the same as those for her false arrest and malicious prosecution claims. Defendants' motion to dismiss this claim is granted.

B.  **Remaining Negligence Claim**

Weaver also asserts a state law claim for negligence in the hiring, training, supervision, and retention of defendant officers. Weaver alleges that the City "failed to use reasonable care in the screening, hiring and retention" and in the "training and supervision" of defendants who participated in her arrest and prosecution. (See Compl. ¶¶ 116-122.) Under New York law, a plaintiff "seeking damages for an injury resulting from a wrongful arrest and detention may not recover under broad general principles of negligence ... but must proceed by way of the traditional remedies of false arrest and imprisonment." Johnson v. Kings Cnty. Dist. Attorney's Office, 308 A.D.2d 278, 284-85, 763 N.Y.S.2d 635, 640 (2nd Dep't 2003) (citations and internal quotations omitted); see Ellis v. Gannon, No. 10-CV-1373, 2011 WL 5513184, at *6 (E.D.N.Y. Nov. 10, 2011) (dismissing plaintiff's state law negligence claim for unlawful arrest and prosecution as not cognizable under New York law). Weaver's negligent hiring, training, supervision, and retention claim against the City arise out of the same set of facts as her claims for false arrest and malicious prosecution. This claim is dismissed.

C.  **Violations of New York State Constitution**

Lastly, Weaver's twentieth cause of action alleges, without any factual support, that defendants violated the search and seizure provisions of the New York State constitution. (See Compl. ¶¶ 125-129.) Weaver's claim under the search and seizure clause of the New York state constitution is not available where an alternative remedy – such as her viable Fourth Amendment claim for false arrest – will adequately protect the interests at stake. See Pace v. Town of

16

Southampton, 678 F. Supp. 2d 79, 88 (E.D.N.Y. 2010) ("Given that any violation of the Plaintiff's Fourth Amendment rights can be vindicated through her Section 1983 claim, it follows that she has no private right of action under the New York State Constitution."). Accordingly, this claim is dismissed.

## CONCLUSION

For the foregoing reasons, defendants' motion to dismiss Weaver's complaint is granted in part and denied in part. All claims are dismissed except for (1) Weaver's false arrest claims as against Sergeant John Doe 1 and Officers Gingo and John Doe 1; (2) Weaver's malicious prosecution and failure to intervene claims as against the individual defendants; and (3) Weaver's false arrest and malicious prosecution claims against the City under a theory of respondeat superior liability.

SO ORDERED.

Dated: March 10, 2014
Brooklyn, N.Y.

s/Carol Bagley Amon

Carol Bagley Amon
Chief United States District Judge