UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------------------------X

TANESHA WEAVER,

Plaintiff,

-against-

CITY OF NEW YORK, POLICE OFFICER GREGGORY
GINGO, POLICE OFFICER ANTHONY MATOS, and
LIEUTENANT JEROME BACCHI, In their Individual and
in their Official Capacities,

**AMENDED
COMPLAINT**

13-CV-0020
(CBA) (SMG)

Jury Trial Demanded

Defendants.

--------------------------------------------------------------------------------X

Plaintiff TANESHA WEAVER, by her attorney, The Trainor Law Firm, P.C.,
complaining of Defendants, respectfully alleges as follows:

## PRELIMINARY STATEMENT

1.      Plaintiff brings this action for compensatory damages, punitive damages and
attorneys' fees pursuant to 42 U.S.C. §§ 1983 and 1988 for violations of her civil rights, as these
rights are secured by these statutes and the Constitutions of the United States and the State of
New York.  Plaintiff also asserts supplemental state law claims.

## JURISDICTION

2.      Plaintiff brings this action pursuant to 42 U.S.C. §§ 1983 and 1988, and the
Fourth and Fourteenth Amendments to the United States Constitution.

3.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1343
and 1367.

## VENUE

4.      Venue is properly laid in the Eastern District of New York pursuant to 28 U.S.C.

§ 1391(b) because this is the District in which this claim arose.

## JURY DEMAND

5.     Plaintiff respectfully demands a trial by jury on all issues in this matter pursuant to Federal Rule of Civil Procedure 38 (b).

## PARTIES

6.     Plaintiff TANESHA WEAVER is a thirty-five year old African-American woman and United States citizen who resides in Kings County, New York.

7.     Defendant CITY OF NEW YORK was and is a municipal corporation duly organized and existing under and by virtue of the laws of the State of New York.

8.     Defendant CITY OF NEW YORK maintains the New York City Police Department ("NYPD"), a duly authorized public authority and/or police department, authorized to perform all functions of a police department as per the applicable sections of the aforementioned municipal corporation, CITY OF NEW YORK.

9.     At all times hereinafter mentioned, the individually named defendants, POLICE OFFICER GREGGORY GINGO and POLICE OFFICER ANTHONY MATOS, were duly sworn police officers of the NYPD and were acting under the supervision of the NYPD and according to their official duties.

10.     At all times hereinafter mentioned, the individually named defendant LIEUTENANT JEROME BACCHI was a duly sworn Sergeant and supervisor of the NYPD and acting according to his official duties with the NYPD; and, as a Sergeant, he was the highest ranking uniformed officer with supervisory responsibilities at all times relevant to these events.

11.     At all times hereinafter mentioned, Defendants, either personally or through their employees, were acting under color of state law and/or in compliance with the official rules,

2

regulations, laws, statutes, customs, usages and/or practices of the State of New York and/or the
CITY OF NEW YORK.

12. Each and all of the acts of Defendants alleged herein were done by the
individually named defendants while acting within the scope of their employment with
Defendant CITY OF NEW YORK.

## FACTS

13. Ms. Weaver's nightmare began on a Saturday night and continued unabated for
three days.

14. On July 9, 2011, at approximately 10:00 p.m., Ms. Weaver was in her bedroom in
her home, located at 946 Albany Avenue, Brooklyn, New York, when her then-boyfriend Harvey
Moultrie, without any provocation whatsoever, lunged at her, grabbed her house keys from her
hand, and, with a closed fist, punched Ms. Weaver directly in the face, sending her flying
backward. She did not hit him back. Moultrie is roughly six feet tall. With that punch, Moultrie
broke Ms. Weaver's nose, as medical records would later confirm.

15. Frightened from this attack, and from a horrific attack two days earlier at the
hands of Moultrie, Ms. Weaver wanted to ensure that if Moultrie attacked her again, she might
possibly be able to defend herself. Immediately after Moultrie broke her nose, Ms. Weaver
found a stick about a foot and a half long, but it was for naught.

16. When Moultrie saw her, he immediately began strangling Ms. Weaver by placing
both of his hands around her neck and squeezing tight. She could not defend herself with the
stick because it fell from her hands while he choked her. Eventually, she fell to floor.

17. When she was able to get up, Ms. Weaver ran out of the bedroom to the living
room to obtain her cell phone, so she could call the police. Moultrie, however, ran after her and

3

forcibly took her cell phone from her hands. Ms. Weaver then ran for the landline telephone in her home, but Moultrie grabbed that from her, too.

18. As a result of this attack, Ms. Weaver pleaded with Moultrie to let her go to the hospital because she knew he had broken her nose. Unmoved, Moultrie told her she was not leaving the house and began searching through the contents of her cell phone.

19. Subjected to a vicious attack, frightened, and desperate, Ms. Weaver tried to run to her laptop in an attempt to contact someone for help. When she got to her laptop, Moultrie came toward her; and, in order to defend herself against another onslaught, Ms. Weaver picked up a pair of scissors that was on the table in the futile hope that she would scare Moultrie off from further attack. It had the opposite effect. Moultrie jumped on top of her, and grabbed the scissors from her hand. In doing so, Moultrie cut Ms. Weaver's finger with the scissor, resulting in her bleeding from an open wound.

20. When Moultrie and Ms. Weaver separated, she ran to the bathroom to get away from him. Eventually, she left the bathroom and went back to the living room to attempt again to contact someone for help from her laptop because Moultrie still had her cell phone and was still looking through its contents.

21. This time, Ms. Weaver was able to get to the laptop unmolested, logged on to her Facebook account, and contacted her nephew, Timothy Spencer.

22. Ms. Weaver sent Timothy a message, via Facebook, and told him to call the police because Moultrie was trying to kill her. Timothy responded that he would do so.

23. After Ms. Weaver sent the initial message to Timothy, she continued messaging him because no police arrived at her home. Timothy informed Ms. Weaver that his mother, Tasha Tarry, who is Ms. Weaver's sister, called the police to report that Ms. Weaver was

4

attacked and in present danger. The police never responded to this call.

24.     To avoid further harm at the hands of Moultrie, Ms. Weaver went to the bathroom and locked the door. She sat there, waiting for the police to come to her aid.

25.     The police never came in response to Ms. Tarry's call. Ms. Tarry, however, did arrive at Ms. Weaver's home with her son, Timothy. When Ms. Tarry confronted Moultrie, she demanded to know where her sister was, but Moultrie claimed Ms. Weaver left. Hearing this exchange, Ms. Weaver started screaming for help.

26.     When Ms. Tarry and Timothy got past Moultrie, Ms. Weaver left the bathroom in which she locked herself and saw her sister and nephew.

27.     With her family there, Ms. Weaver instructed Moultrie that she wanted him to leave the apartment. He refused to leave, so Ms. Weaver called the police, via 911, from her cell phone, which she had been able to retrieve from Moultrie now that her family was with her.

28.     When she called 911, Ms. Weaver informed the operator that she needed the police and an ambulance. She informed the 911 operator that her then-boyfriend, Moultrie, beat her up. At some point after 12:00 a.m., on July 10, 2011, POLICE OFFICER GREGGORY GINGO and POLICE OFFICER ANTHONY MATOS arrived at Ms. Weaver's home.

29.     Ms. Weaver informed Defendants that Moultrie attacked her, punched her in the face and broke her nose, strangled her, and held her hostage in her home by refusing to let her leave. She further explained to Defendants that she sent a message on Facebook to her nephew to have him call the police because Moultrie forcibly took her phone. When she told Defendants that her sister called the police to report Moultrie assaulting her, Defendants responded that they received the call, but it was not in their jurisdiction.

30.     Moreover, Defendants reviewed the Facebook message that Ms. Weaver sent her

5

nephew, in which she told him that Moultrie was trying to kill her and to call the police. Defendants, however, never questioned Timothy or Ms. Tarry, who initially called the police in response to Ms. Weaver's Facebook message.

31.     Defendants asked Ms. Weaver if she hit Moultrie. She explained that she had not done so. Rather, she explained that she had grabbed a stick after Moultrie broke her nose to avoid further attack but never had an opportunity to defend herself with it because Moultrie strangled her; and, as a result, the stick fell out of her hands and onto the floor.

32.     At this point, Defendants had more than enough probable cause to arrest Moultrie for assaulting Ms. Weaver, among other criminal charges. Ms. Weaver's nose was broken, her face swollen and bruised, her neck showed visible redness, and her finger cut open such that it had been bleeding. The nightmare she endured had continued for hours, and Defendants even reviewed her contemporaneous cries for help to her nephew through her Facebook message to him because Moultrie forcibly took her cell phone.  As duly appointed NYPD officers, Defendants had the lawful duty to end Ms. Weaver's nightmare; instead, they compounded it exponentially.

33.     In a callousness matched only by the lawlessness that gives rise to this action, Defendants informed Ms. Weaver that they had to wait for their Sergeant to determine whether they were going to arrest her, the victim of this nightmarish assault followed by imprisonment at the hands of Moultrie.

34.     When then-SERGEANT JEROME BACCHI arrived, rather than speak with Ms. Weaver, he went to speak with Moultrie, who was in the bedroom, the same one in which he

6

initially assaulted Ms. Weaver.[1]  POLICE OFFICERS GREGGORY GINGO and ANTHONY MATOS followed then-SERGEANT JEROME BACCHI to the bedroom to speak with Moultrie.

35.     Upon the conclusion of Defendants' conversation with Moultrie, Defendants informed Ms. Weaver that they were arresting her for felony assault.

36.     Defendants placed handcuffs on Ms. Weaver's wrists and transported her to the NYPD's 67th Precinct, where she was imprisoned.

37.     Defendants processed Ms. Weaver's arrest at the 67th Precinct and then transported her to the New York City Department of Corrections' Brooklyn Central Booking facility.  While in Brooklyn Central Booking, Ms. Weaver was finally taken to the Emergency Room at Long Island College Hospital in Brooklyn, so the injuries Moultrie inflicted upon her could be observed and treated.  The doctors diagnosed Ms. Weaver with a broken nose, a facial contusion, and an abrasion on her right second finger.  While the doctors observed Ms. Weaver, she remained handcuffed with her arms behind her back and in police custody.

38.     Upon being released from Long Island College Hospital, Defendants transported Ms. Weaver back to the 67th Precinct, where she remained unlawfully imprisoned until July 12, 2011, when Defendants transported her to the Criminal Court of the City of New York, County of Kings, for arraignment on the baseless charges filed under Docket Number 2011KN055439.  These charges were filed based upon the false allegations of POLICE OFFICER GREGGORY GINGO, who was informed by the patently false allegations of Harvey Moultrie, the man who punched Ms. Weaver in the nose, breaking it, and imprisoned her in her own home.

39.     Defendants charged Ms. Weaver with felony assault, yet arrested and charged

---

[1]     At the time of this incident, Jerome Bacchi was an NYPD Sergeant.  According to defense counsel, Bacchi has since been promoted to an NYPD Lieutenant, which is why he is so designated in the caption.

Moultrie with misdemeanor assault and obstruction of breathing for punching Ms. Weaver and strangling her.

40.     Defendants arrested Ms. Weaver without probable cause or any legal justification whatsoever.  The circumstances known to Defendants at the time that they arrived at Ms. Weaver's home and until they falsely arrested her were such:  Ms. Weaver was the victim, Moultrie the attacker.  Rather than arresting Moultrie outright, Defendants treated him as the victim, but the circumstances in this case raised substantial and unequivocal doubt as to Moultrie's veracity and claims that Ms. Weaver was the aggressor.

41.     Not only did common sense dictate that Ms. Weaver was the victim of Moultrie's assault, but the circumstances placed an affirmative duty upon Defendants to investigate Moultrie's claims.  Hours before she was arrested, Ms. Weaver messaged her nephew that Moultrie was trying to kill her and pleaded with him to call the police.  Ms. Weaver later called 911 to report Moultrie's crimes against her, which is what prompted Defendants to arrive at her home.  Ms. Weaver sustained a broken nose, a contusion, and redness around her neck that POLICE OFFICER GREGGORY GINGO observed; and, as a result, he arrested and charged Moultrie with inflicting these injuries upon her.  Under these circumstances, any reasonable police officer would have further investigated Moultrie's self-serving, unreliable, and incredible claims of victimhood, which would have indicated his allegations were wholly false.

42.     Upon Ms. Weaver's arraignment on the false felony charges that Defendants filed against her under Docket No. 2011KN055439, the presiding Criminal Court judge released her on her own recognizance.

43.     Prior to her release at arraignment, Mr. Weaver spent approximately 40 hours falsely imprisoned.

8

44. Defendants initiated Ms. Weaver's imprisonment and prosecution with malice, and otherwise caused this prosecution to be commenced against Ms. Weaver for the purpose of obtaining a collateral objective outside the legitimate ends of the legal process, to wit: to cover up their aforementioned abuse of authority.

45. The underlying malicious prosecution compelled Ms. Weaver to return to Court to face these false charges on two occasions until January 12, 2012, when, upon the application of the Kings County District Attorney's Office, the Kings County Criminal Court dismissed this case outright and sealed it.

46. All of the events leading up to and culminating in Ms. Weaver's false arrest and malicious prosecution occurred while other NYPD officers, including, but not limited to, POLICE OFFICER ANTHONY MATOS and LIEUTENANT JEROME BACCHI, were present and failed to intervene to prevent POLICE OFFICER GREGGORY GINGO from falsely arresting Mr. Weaver despite having every opportunity to do so.

47. All of the above occurred as a direct result of the unconstitutional policies, customs or practices of Defendant CITY OF NEW YORK, including, but not limited to, the inadequate screening, hiring, retaining, training, promoting, disciplining, compensating, and supervising of its employees.

48. The false arrest and malicious prosecution of Ms. Weaver is not an isolated incident. Defendant CITY OF NEW YORK is aware, from lawsuits filed in state and federal court, notices of claim, and complaints filed with the NYPD's Internal Affairs Bureau, and the Civilian Complaint Review Board, that many NYPD officers, including POLICE OFFICER GREGGORY GINGO, POLICE OFFICER ANTHONY MATOS, and LIEUTENANT JEROME BACCHI, abuse their authority and are insufficiently trained on what constitutes probable cause

9

for an arrest, and that these officers have repeatedly arrested individuals who were the actual victims of crimes of violence, based upon the false allegations of the perpetrator. Indeed, it is widely understood that the NYPD has engaged in, and continues to engage in, an unlawful policy of arresting both victim and perpetrator in certain domestic violence disputes.

49. Defendant CITY OF NEW YORK is further aware that such conduct and improper training has often resulted in a deprivation of civil rights. Despite such notice, Defendant CITY OF NEW YORK has failed to take corrective action. This failure caused the individually named defendants to violate Plaintiff TANESHA WEAVER's civil rights.

50. Further, upon information and belief, Defendant CITY OF NEW YORK was aware, prior to this incident, that POLICE OFFICER GREGGORY GINGO, POLICE OFFICER ANTHONY MATOS, and LIEUTENANT JEROME BACCHI, lacked the objectivity, temperament, maturity, discretion, and disposition to be employed as police officers. Despite such notice, Defendant CITY OF NEW YORK has retained these officers, and failed to adequately train and supervise them.

51. As a result of Defendants' aforementioned conduct, Plaintiff TANESHA WEAVER sustained, *inter alia*, mental injuries, emotional distress, embarrassment, humiliation, and deprivation of her constitutional rights and liberty.

## FEDERAL CLAIMS

### AS AND FOR A FIRST CAUSE OF ACTION
(Deprivation of Rights Under 42 U.S.C. § 1983)

52. Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs "1" through "51" with the same force and effect as if fully set forth herein.

53. All of the aforementioned acts of Defendants, their agents, servants and

10

employees were carried out under the color of state law.

54. All of the aforementioned acts deprived Plaintiff TANESHA WEAVER, a member of a racial minority, of the rights, privileges and immunities guaranteed to citizens of the United States by the Fourth and Fourteenth Amendments to the Constitution of the United States of America, and in violation of 42 U.S.C. § 1983.

55. The acts complained of herein were carried out by the individually named defendants in their capacities as police officers, with the entire actual and/or apparent authority attendant thereto.

56. The acts complained of herein were carried out by the individually named defendants in their capacities as police officers, pursuant to the customs, usages, practices, procedures, and the rules of Defendant CITY OF NEW YORK and the NYPD, all under the supervision of ranking officers of the NYPD.

57. Defendants, collectively and individually, while acting under color of state law, engaged in conduct that constituted a custom, usage, practice, procedure or rule of the respective municipality/authority, which is forbidden by the Constitution of the United States.

58. As a result of the foregoing, Plaintiff is entitled to compensatory damages in amount to be fixed by a jury, and is further entitled to punitive damages against the individual defendants in an amount to be fixed by a jury, plus reasonable attorneys' fees, costs, and disbursements of this action.

## AS AND FOR A SECOND CAUSE OF ACTION
### (False Arrest/Unlawful Imprisonment under 42 U.S.C. § 1983)

59. Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs numbered "1" through "58" with the same force and effect as if fully set forth herein.

11

60.     Defendants arrested Plaintiff TANESHA WEAVER without probable cause, causing her to be detained against her will for an extended period of time and subjected to physical restraints.

61.     Defendants caused Plaintiff TANESHA WEAVER to be falsely arrested and unlawfully imprisoned, resulting in her being put in fear for her safety, humiliated, embarrassed, afraid, and deprived of her liberty.

62.     As a result of the foregoing, Plaintiff is entitled to compensatory damages in amount to be fixed by a jury, and is further entitled to punitive damages against the individual defendants in an amount to be fixed by a jury, plus reasonable attorneys' fees, costs, and disbursements of this action.

### AS AND FOR A THIRD CAUSE OF ACTION
(Malicious Prosecution under 42 U.S.C. § 1983)

63.     Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs numbered "1" through "62" with the same force and effect as if fully set forth herein.

64.     Defendants initiated, commenced and continued a malicious prosecution against Plaintiff TANESHA WEAVER.

65.     Defendants caused Plaintiff TANESHA WEAVER to be prosecuted without any probable cause until the charges were dismissed outright on or about January 12, 2012, resulting in a favorable termination for Plaintiff.

66.     As a result of the foregoing, Plaintiff is entitled to compensatory damages in amount to be fixed by a jury, and is further entitled to punitive damages against the individual defendants in an amount to be fixed by a jury, plus reasonable attorneys' fees, costs, and disbursements of this action.

12

## AS AND FOR A FOURTH CAUSE OF ACTION
(Failure to Intervene under 42 U.S.C. § 1983)

67. Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs numbered "1" through "66" with the same force and effect as if fully set forth herein.

68. Defendants had an affirmative duty to intervene on behalf of Plaintiff TANESHA WEAVER, whose constitutional rights were being violated in their presence by other officers.

69. Defendants failed to intervene to prevent the unlawful conduct described herein despite having every opportunity to do so.

70. As a result of the foregoing, Plaintiff TANESHA WEAVER's liberty was restricted for an extended period of time, she was put in fear of her safety, and she was humiliated and subjected to handcuffing, other physical restraints, and ultimately an extended period of incarceration.

71. As a result of the foregoing, Plaintiff is entitled to compensatory damages in amount to be fixed by a jury, and is further entitled to punitive damages against the individual defendants in an amount to be fixed by a jury, plus reasonable attorneys' fees, costs, and disbursements of this action.

72. Defendants, collectively and individually, while acting under color of state law, were directly and actively involved in violating Plaintiff TANESHA WEAVER's constitutional rights.

73. All of the foregoing acts by Defendants deprived Plaintiff TANESHA WEAVER of federally protected rights, including, but not limited to, the right:

A. Not to be deprived of liberty without due process of law;

B. To be free from false arrest/unlawful imprisonment;

13

> C.     To be free from malicious prosecution; and
>
> D.     To be free from the failure to intervene.

74.     As a result of the foregoing, Plaintiff is entitled to compensatory damages in amount to be fixed by a jury, and is further entitled to punitive damages against the individual defendants in an amount to be fixed by a jury, plus reasonable attorneys' fees, costs, and disbursements of this action.

## SUPPLEMENTAL STATE LAW CLAIMS

75.     Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs numbered "1" through "74" with the same force and effect as if fully set forth herein.

76.     Within ninety (90) days after the claim herein accrued, Plaintiff duly served upon, presented to, and filed with, the CITY OF NEW YORK, a Notice of Claim setting forth all the facts and information required under the General Municipal Law 50-e.

77.     The CITY OF NEW YORK has wholly neglected or refused to make an adjustment or payment thereof, and more than thirty (30) days have elapsed since the presentation of such claim to the CITY OF NEW YORK.

78.     This action was commenced within one (1) year and ninety (90) days after the cause of action herein accrued.

79.     Plaintiff has complied with all conditions precedent to maintaining the instant action.

80.     This action falls within one or more of the exceptions as outlined in C.P.L.R. § 1602.

14

## AS AND FOR A FIFTH CAUSE OF ACTION
(False Arrest under the laws of the State of New York)

81.    Plaintiff repeats, reiterates, and realleges each and every allegation contained in

paragraphs numbered "1" through "80" with the same force and effect as if fully set forth herein.

82.    Defendants arrested Plaintiff TANESHA WEAVER without probable cause.

83.    Plaintiff was detained against her will for an extended period of time and

subjected to physical restraints.

84.    As a result of the aforementioned conduct, Plaintiff TANESHA WEAVER was

unlawfully imprisoned in violation of the laws of the State of New York.

85.    As a result of the aforementioned conduct, Plaintiff TANESHA WEAVER

suffered physical and mental injury, together with embarrassment, humiliation, shock, fright, and

loss of freedom.

86.    As a result of the foregoing, Plaintiff is entitled to compensatory damages in

amount to be fixed by a jury, and is further entitled to punitive damages against the individual

defendants in an amount to be fixed by a jury, plus reasonable attorneys' fees, costs, and

disbursements of this action.

## AS AND FOR A SIXTH CAUSE OF ACTION
(Malicious Prosecution under the laws of the State of New York)

87.    Plaintiff repeats, reiterates and realleges each and every allegation contained in

paragraphs numbered "1" through "86" with the same force and effect as if fully set forth herein.

88.    Defendants initiated, commenced and continued a malicious prosecution against

Plaintiff TANESHA WEAVER.

89.    Defendants caused Plaintiff to be prosecuted without probable cause until the

charges were dismissed and sealed on or about January 12, 2012.

90.     As a result of the foregoing, Plaintiff is entitled to compensatory damages in amount to be fixed by a jury, and is further entitled to punitive damages against the individual defendants in an amount to be fixed by a jury, plus reasonable attorneys' fees, costs, and disbursements of this action.

### AS AND FOR A SEVENTH CAUSE OF ACTION
(*Respondeat Superior* liability under the laws of the State of New York)

91.     Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs numbered "1" through "90" with the same force and effect as if fully set forth herein.

92.     Defendant CITY OF NEW YORK is vicariously liable for the acts of its employees and agents, including the individually named defendants, who were on duty and acting in the scope of their employment when they engaged in the wrongful conduct described herein.

93.     As police officers with the NYPD, the individual defendants were employees of Defendant CITY OF NEW YORK and were acting within the scope of their employment when they engaged in the wrongful conduct described herein.

94.     As a result of Defendants' conduct, Plaintiff TANESHA WEAVER has suffered pain and mental anguish, together with shock, fright, apprehension, embarrassment, and humiliation, and an extended period of unlawful imprisonment and deprivation of her liberty.

95.     As a result of the foregoing, Plaintiff is entitled to compensatory damages in amount to be fixed by a jury, and is further entitled to punitive damages against the individual defendants in an amount to be fixed by a jury, plus reasonable attorneys' fees, costs, and disbursements of this action.

16

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff TANESHA WEAVER demands judgment and prays for the

following relief, jointly and severally, against Defendants:

- (A)    full and fair compensatory damages in an amount to be determined by a jury;

- (B)    punitive damages against the individual defendants in an amount to be determined

    by a jury;

- (C)    reasonable attorneys' fees and the costs and disbursements of this action; and

- (D)    such other and further relief as the Court deems just and proper.

Dated: New York, New York
        May 13, 2014

Respectfully submitted,

**THE TRAINOR LAW FIRM, P.C.**
419 Lafayette Street, 2nd Floor
New York, New York 10003
(212) 300-6557

By:    _____
        CRAIG TRAINOR (CT 1823)

*Attorney for Plaintiff TANESHA WEAVER*

17

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------------------------X

TANESHA WEAVER,

                                        Plaintiff,

-against-                                             13-CV-0020 (CBA)(SMG)

CITY OF NEW YORK, POLICE OFFICER GREGGORY
GINGO, POLICE OFFICER ANTHONY MATOS, and
LIEUTENANT JEROME BACCHI, In their Individual and
in their Official Capacities,

                                        Defendants.

------------------------------------------------------------------------------X

# AMENDED COMPLAINT

## THE TRAINOR LAW FIRM, P.C.
Attorney for Plaintiff
419 Lafayette Street, 2nd Floor
New York, New York 10003
(212) 300-6557